**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 22–H.**

United States Claims Court.

Sept. 20, 1985.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff White Mountain Apache Tribe of Arizona ("plaintiff") moved for a supplemental accounting. Defendant has responded and also moved over plaintiff's objection to dismiss certain exceptions. Ruling on this matter was deferred pending appellate review of a judgment terminating this litigation. *See White Mountain Apache Tribe v. United States,* 6 Cl.Ct. 575, 577 n. 2 (1984), *vacated & remanded,* Nos. 85–895 & 85–1348 (Fed.Cir. Aug. 7, 1985).

## FACTS

The motion under consideration is plaintiff's second opportunity to comply with an order allowing it to request a supplemental accounting. Plaintiff's first motion, wholly noncompliant, was the subject of an order entered on February 13, 1984, in *White Mountain Apache Tribe v. United States,* 4 Cl.Ct. 586 (1984) ("the February 1984 accounting order"). Paragraph 4 of that order required plaintiff to file "a motion requiring defendant to provide a further supplemental accounting with respect to all fiscal claims that were not the subject of the 1978 trial ... [and] that were the subject of plaintiff's November 2, 1983 motion for reconsideration...." 4 Cl.Ct. at 590. Paragraphs 2 and 3 of the February 1984 accounting order imposed additional parameters on the scope of plaintiff's request for

a supplemental accounting by limiting fiscal claims in the case "to those years prior to August 14, 1946," 4 Cl.Ct. at 590, and by providing that "[a]ll disbursement claims from IMPL [Indian Moneys Proceeds of Labor] accounts before August 14, 1946, shall not be the subject of further proof." *Id.*

On March 1, 1984, plaintiff filed its motion pursuant to this order. Defendant responded to plaintiff's motion on June 1, 1984, and simultaneously moved to dismiss certain exceptions taken by plaintiff to a July 31, 1975 GSA Indian Trust Accounting Division, Office of Finance and Disbursement Accounting Report (the "1975 GSA Report"). The 1975 GSA Report was a supplemental accounting to another GSA Report dated November 6, 1970. Plaintiff's exceptions to the 1975 GSA Report were filed on November 28, 1975. Defendant moves to dismiss exception nos. 1(b), 2(b), 3(b), 4(a), 5(a), 8, 9, 10(a), 104, 108, and 118 on the ground that these exceptions fail to state claims upon which relief can be granted. Defendant's response and motion were followed by plaintiff's reply brief on August 1, 1984. Appended to plaintiff's reply are the affidavits of (1) Mary Clarkson Endfield, July 27, 1984, a member and current secretary of plaintiff tribe and former secretary to William Donner, Superintendent of the Fort Apache Indian Agency, Bureau of Indian Affairs (the "BIA") from June 1944 until October 3, 1949; (2) Hal Butler, July 30, 1984, the son of a logging contractor who contracted with the BIA; and (3) Paul J. Gillis, August 1, 1984, a certified public accountant specializing in Indian fiscal matters.

Due to the wide scope of plaintiff's supplemental accounting requests and exceptions previously taken and the factual particularities and arguments associated therewith, the requests are described as each is ruled on in order to avoid unnecessary repetition.

## DISCUSSION

■ Plaintiff has placed limitations on its likelihood of either prevailing on its motion for supplemental accounting or successfully opposing defendant's motion to dismiss. First, plaintiff habitually contra-

venes paragraphs 2 and 3 of the February 1984 accounting order by requesting supplemental accountings concerning fiscal claims arising after August 13, 1946, and seeking material related to disbursement claims from IMPL accounts. Secondly, plaintiff has burdened an analysis of the motions at issue by failing, in its reply, to separate its arguments concerning the supplemental accounting and the exceptions it took to the 1975 GSA Report. Moreover, plaintiff argues in generalized terms and through wholesale incorporation by reference of affidavits to bolster its accounting requests when they must be presented with clarity and specificity. *White Mountain Apache Tribe*, 4 Cl.Ct. at 589 (citing *Three Affiliated Tribes v. United States*, 37 Ind. Cl.Comm. 129, 131 (1975), and *Colorado River Indian Tribes v. United States*, 36 Ind.Cl.Comm. 425, 426 (1975)) ("The court is not prepared to order defendant to prepare further accountings without specific requests therefor.").

Plaintiff was given leave to file another request for a supplemental accounting not because the opportunity was required by statute, decisional law, or the facts; rather, the court in its discretion determined that the record would be better served by so providing. This is plaintiff's second attempt to state its requests for a supplemental accounting. In addition, the accountings in this case were rendered well over a decade ago. It is reasonable in these circumstances to require that the need for each of the requests as to which plaintiff seeks a supplemental accounting be justified. *Cf. Blackfeet & Gros Ventre Tribes v. United States*, 32 Ind.Cl.Comm. 65, 85 & n. 1 (1973).

*Motion for Supplemental Accounting*

I.–V. *Appropriations Under the Act of 1869*[1]

Plaintiff seeks an accounting for "annual appropriations, disbursements, and other disposition[s] of funds appropriated" under the Act of April 10, 1869, ch. 16, 16 Stat. 13 (1869) (the "Act"), and subsequent acts of a similar nature. Plf's Mot. filed Mar. 1, 1984, at 3. Under the Act, Congress appropriated funds which were to be disbursed by agents of the Government. Section 4 of the Act

---

1. For purposes of clarity, this order will carry over the Roman numeral designation adopted

by plaintiff in its motion for supplemental accounting filed on March 1, 1984.

[enabled] the President to maintain the peace among and with the various tribes, bands, and parties of Indians, and to promote civilization among said Indians, bring them, where practicable, upon reservations, relieve their necessities, and encourage their efforts at self-support....

16 Stat. 40. Section 4, 16 Stat. 40, required that a report "be made in detail to Congress" of all expenditures under the $2,000,000 appropriation authorized by the Act. Further, a board of commissioners, in conjunction with the Secretary of Interior, was to exercise control over disbursement of the appropriations.

In its response to plaintiff's renewed request, defendant contends that the Government is not required to account for congressional appropriations, *Blackfeet & Gros Ventre Tribes v. United States*, 32 Ind.Cl.Comm. at 90–92, and that plaintiff has failed to show that the Act or any subsequent related act specifically imposed an accounting obligation on the Government with respect to the White Mountain Apache Tribe. Plaintiff has not even attempted to refute either of these contentions with authority that the Act imposed accounting obligations upon defendant. In fact, after propounding its request, plaintiff makes no mention of the Act. Plaintiff's virtual abandonment of its request justifies its denial.

VI. A. & B. *Treasury Cash Cards for IMPL Accounts*

Plaintiff seeks copies of Treasury cash cards for plaintiff's IMPL principal and interest accounts for the years 1883–1951 and 1930–1951, respectively.[2]

---

**2.** Plaintiff indicates in request XII that the POL accounts are successors to the IMPL accounts. Although plaintiff's request in VI and VII refers to POL accounts, defendant's response addresses these requests by reference to the IMPL accounts. Plaintiff gives no indication that defendant's response was incomplete or that a distinction should be recognized between IMPL or POL accounts.

It should also be noted that request VII. A.1 seeks materials pertaining to the period beginning in 1883. This request is denied. *See* VII.

In its response defendant contends that the workpapers supporting the 1975 GSA Report contain substantially the information that plaintiff now requests. This, however, is not true. The workpapers "set forth daily, individual receipt and disbursement transactions" and "do not reflect balances on hand to the credit of the Tribe in the United States Treasury." Gillis Aff. ¶ 7(b)–(c). Mr. Gillis avers that he is unable to determine actual balances predicated upon the 1970 and 1975 GSA Reports and that, without such information, he is unable to "verify the correctness of interest credited to it [plaintiff] by the United States." *Id.* ¶ 7(g).

To the extent that the information sought relates to the adequacy of the 1975 GSA Report on disbursements, further inquiry has been foreclosed. *See White Mountain Apache Tribe*, 4 Cl.Ct. at 589. Defendant shall comply with plaintiff's supplemental accounting request with respect to balance information only. The scope of the request will be limited in accordance with the February 1984 accounting order to include only those Treasury cards reflecting balance information in plaintiff's IMPL principal and interest accounts for the years 1883 to August 13, 1946, and 1930 to August 13, 1946, respectively. Paragraph 2 of that order barred plaintiff's request to the extent that it represented a fiscal claim arising after August 13, 1946. *Id.* at 590.

VI C. *Treasury Cash Cards for Agency School and Related Accounts*

By this request plaintiff seeks Treasury cash cards for IMPL Agency School and related accounts for the period July 1, 1919, through June 30, 1951.[3]

---

A.1 *infra.* To the extent that other requests which fail to state the earliest year to which the request relates are not denied, the starting year shall be designated as 1898, which is the earliest year covered by the 1975 GSA Report.

**3.** Paragraph 2 of the February 1984 accounting order bars plaintiff's claim to the extent that its scope exceeds by five years the August 14, 1946 cut-off date for fiscal claims. Accordingly, plaintiff's request will be addressed only as it relates to the period July 1, 1919, to August 13, 1946.

Defendant contends that this accounting request relates to "non-tribal trust funds" that were deposited in "Government Accounts." Def's Br. filed June 1, 1984, at 5. According to defendant, the funds at issue are comprised of "Class II" and "Class IV" receipts. These types of receipts are collected and deposited in the governmental fund which originally provided the financing to generate the Class II or IV receipt. For example, "[F]ees [Class IV receipts] collected from people who grazed their stock on school land were deposited in the [Government] account containing the funds used to finance the school's operations." *Id.* Defendant concludes that "the Government has already provided more than ample data on receipts comprising the 'Government Accounts' in its 1975 supplemental accounting...." *Id.* (footnote omitted).

Plaintiff's reply brief contains one sentence regarding request VI. C, and the brief also refers to Mr. Gillis' affidavit. The affiant supplies a confusing explanation concerning the history of the IMPL agency school and related accounts and neither addresses defendant's analysis of the accounts at issue nor defendant's contention regarding the adequacy of the 1975 GSA Report. Not only was plaintiff required in its motion making the requests to particularize its claims for further supplemental accountings, but it also had the opportunity to clarify its requests by reply. The lack of specificity in the justification for this request is as damaging as an unspecific request. *See White Mountain Apache Tribe,* 4 Cl.Ct. at 589 (citing cases).

■ The analysis in the Gillis affidavit closes with the general assertion that "Defendant's agents in the field regularly and wrongfully deposited proceeds of the White Mountain Apache Reservation in that [IMPL] account instead of in Tribal trust accounts." Gillis Aff. ¶ 8 A. In *Blackfeet & Gros Ventre Tribes,* 32 Ind.Cl.Comm. 65, 92–93, the Indian Claims Commission ruled that a plaintiff must offer proof that tribal revenues had been deposited erroneously before the Government will be required to further account for the money deposited in

Government accounts. Plaintiff has made no specific proffer of an erroneous deposit of funds. Further, without some corroborating data, Mr. Gillis' belief that "essentially the same type of mistake" was made as in *Blackfeet,* Gillis Aff. ¶ 8 A, alone does not justify plaintiff's claim for Treasury cash cards for these accounts.

### VII. A. 1 & 2 *Disbursement Vouchers for IMPL Funds*

Plaintiff seeks copies of all disbursement vouchers for all funds paid out of the principal IMPL accounts between 1883 and 1951 and the IMPL interest accounts from 1930 to 1951.

This request is disallowed pursuant to paragraph 3 of the February 1984 accounting order providing, "[a]ll disbursement claims from IMPL accounts before August 14, 1946, shall not be the subject of further proof...." 4 Cl.Ct. at 590. To the extent that plaintiff has sought disbursement vouchers for the entire period beyond August 13, 1946, the request must again be denied pursuant to paragraph 2 of the February 1984 accounting order, which precluded such "fiscal claims" relating to that period. *Id.* In any event, plaintiff should be aware that the disbursement vouchers sought have already been admitted into evidence at the 1978 trial and that the adequacy of the GSA Report on disbursements was at issue therein. *See Id.* at 589.

### VII. B. 1–11 *Disbursement Vouchers for IIM Funds*

Plaintiff seeks copies of all disbursement vouchers for all funds paid out of the following Tribal Individual Indian Money accounts (the "IIM accounts"): 1) Fort Apache Stock Association; 2) Court Fund; 3) Receipts; 4) Disbursing; 5) Fishing Permits; 6) Unidentified Brands; 7) Wild Horse Project; 8) Old Folks Herd; 9) Rehabilitation Trust Fund; 10) Livestock Association; and 11) "[a]ny other Tribal, co-op, or enterprise [IIM] accounts which Plaintiffs' subsequent inquiry may cause to be discovered." Plf's Mot. filed Mar. 1, 1984, at 4–5.

Defendant contends that it need not provide disbursement vouchers relating to the

funds in the accounts listed above as items 1–9 because defendant exercised no direct control over these accounts and, therefore, had no fiduciary obligation with respect thereto. Defendant indicates that while defendant's agent caused disbursements from the tribal IIM funds, the Tribal Council was vested with the ultimate discretion or authority concerning the direction of these disbursements. According to defendant, defendant's agent could not disburse tribal funds until he received a proper request from the tribal treasurer. Additionally, a resolution by the Tribal Council authorizing the treasurer to expend funds had to precede the treasurer's disbursement request.

In reply the Affidavit of Mary Endfield is offered to show that her former employer William Donner, Superintendent of the Fort Apache Agency, in fact exercised "control over how long tribal money stayed at the BIA and how it was managed and disbursed from the IIM Account." Endfield Aff. ¶ 5. Further, Mr. Gillis' affidavit persuasively illustrates Superintendent Donner's control over tribal IIM accounts, contesting defendant's assertions by the following:

> (b) That pursuant to Section 1(d) of Article VI of the Constitution of the White Mountain Apache Tribe, the Secretary of the Interior had authority over the receipt and disbursement of Tribal funds in the IIM accounts, including the preparation of the annual budget, except that the Tribal Council could expend up to $1,000 per year without the approval of the Secretary.
>
> (c) That pursuant to Council Resolution No. 29, the Council on October 2, 1939, acknowledged the power of the Secretary of the Interior and his designated Agent, the Superintendent of the Fort Apache Indian Reservation, over Tribal funds.
>
> (d) That pursuant to Council Resolution No. 114, dated June 12, 1944, the

Council at the suggestion of the Superintendent continued to acknowledge his authority over the Tribal funds.

Gillis Aff. ¶ 17(b)–(d) (citations omitted).

Defendant shall supply plaintiff with disbursement vouchers for the accounts listed in items 1–9 above, beginning with the Fort Apache Stock Association and concluding with the Rehabilitation Trust Fund for the years 1898 through August 13, 1946.[4]

Plaintiff's request in item 10 for a supplemental accounting of all Livestock Association accounts is denied on two grounds. First, defendant contends, and plaintiff's reply fails to dispute, that the associations to which the accounts at issue relate were not tribal organizations, but rather collections of individual Apaches who owned livestock. All claims with respect to these livestock accounts must be instituted in an individual rather than tribal capacity, so that jurisdiction is lacking to consider them. *See* 25 U.S.C. §§ 70a (1976) (repealed in 1978); *Cherokee Freedman v. United States*, 161 Ct.Cl. 787, 789 (1963). Secondly, by referring to "[a]ll livestock ... accounts," item 10 lacks the requisite specificity to warrant the grant of an accounting thereof. *White Mountain Apache Tribe*, 4 Cl.Ct. at 589 (citing cases). Similarly, the request for other accounts which plaintiff may discover in item 11 is fatally unspecific. *Id.* Once again, this is plaintiff's second opportunity to ask for another supplemental accounting. If this request seeking vouchers for subsequently discovered accounts were granted, the court in effect would be sanctioning an accounting without parameters.

VIII. *Receipts for Collections Reported in the GSA Reports*

By this request plaintiff seeks copies of all official receipts designated as collections in the 1970 and 1975 GSA Reports.

---

4. Plaintiff's request for supplemental accounting at paragraph XI is identical to the request in VII. B. 1 & 2, except that it seeks ledger cards rather than disbursement vouchers. Neither party offers an explanation for treating the ledg-

er card and disbursement voucher requests differently. Accordingly, defendant shall supply ledger cards to plaintiff for tribal IIM accounts 1–9 for the years 1898 through August 13, 1946.

Defendant responds that the workpapers furnished to plaintiff as part of the 1975 GSA Report satisfy plaintiff's request VIII. These papers are said to contain a separate scheduling of each receipt reflecting collections of tribal, individual Indian, and government money at the Fort Apache Agency for a period exceeding that which is permitted by the February 1984 accounting order. *See* 4 Cl.Ct. at 590.

Plaintiff has not attempted to show that the workpapers supporting the 1975 GSA Report fail to supply adequate documentation of the collections represented in the 1970 and 1975 GSA Reports. Plaintiff's generalized allegation that the 1970 and 1975 GSA Reports contain errors of fact and law do not justify granting the request in view of defendant's contention that the workpapers contain adequate documentation of the receipts requested.

IX. *Report of Statistics for Lumber Sales*

In this request plaintiff refers to sums set forth by the Government in the 1975 GSA Report. For each sum plaintiff requests a report and supporting workpapers setting forth monthly subtotals, calendar year totals, and a grand total corresponding to all lumber sales. Receipts, dates thereof, sales invoices and official receipt numbers are also desired. With respect to all lumber sold, defendant is to supply data regarding grade, dimension, board feet, and unit price.

Designated by item number and 1975 GSA Report page, the sums to be reported on include:

1. Page 15—$  6,248.64
2. Page 15—$       3.75
3. Page 16—$     23.00
4. Page 18—$210,951.21

Defendant states that "most of the information sought" as to item one ($6,248.64) is provided in the workpapers supporting the 1975 GSA Report. Resp's Reply filed June 1, 1984, at 15. Plaintiff's reply fails to quarrel specifically with defendant's assertion. Hence, defendant is not required to account for this item.

Defendant contends that the combined sum of items two and three ($26.75) was deposited in tribal IIM accounts and that defendant's lack of control over such accounts thus relieves the Government of an accounting obligation. The Endfield and Gillis affidavits, however, challenge defendant's position that it exercised no control over tribal IIM accounts. *See* VII. B. 1–11 *supra*. Defendant shall provide a supplemental accounting with respect to items two and three.

The sum designated in item four ($210,-951.21), according to defendant, was comprised of non-tribal money and was deposited in government accounts. Plaintiff claims that the money was placed improperly in a governmental account, and its reply contains significant authority in support of the proposition that the tribe is entitled to funds derived from lumber sales or any other transaction involving lumber. *See United States v. Mitchell*, 463 U.S. 206, 224–25, 103 S.Ct. 2961, 2971–72, 77 L.Ed.2d 580 (1983) (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 149, 100 S.Ct. 2578, 2586, 65 L.Ed.2d 665 (1980) ("[T]he Government has 'expressed a firm desire that the Tribe should retain the benefits derived from the harvesting and sale of reservation timber.' ")); *White Mountain Apache Tribe v. Bracker*, 448 U.S. at 147, 100 S.Ct. at 2585 (not only receipt of monthly stumpage value, but all profit derived therefrom is the end to be achieved from the development of tribal forests); 29 Op. Att'y Gen. 239, 246 (1911) (purchase money received by the Secretary of the Interior from the sale of timber "should be placed to the credit of the Indians.").

Notwithstanding the fact that the $210,-951.21 may have been placed erroneously in "Government Accounts," the requested receipt information with respect thereto allegedly appears in the workpapers supporting the 1975 GSA Report. Before the Government is ordered to re-account for the sum in question, plaintiff must explain why or how a supplemental accounting would remedy the prior accounting of the

improperly designated government account.

X. *Special Deposit Account Ledger Cards*

"Plaintiff ... requests copies of all ledger cards for the special deposit accounts for the period beginning July 1, 1919 and ending June 10, 1951." Plf's Mot. filed Mar. 1, 1984, at 6. Ownership of funds contained in the special deposit accounts is undetermined, and disposition has been suspended pending a determination of ownership.

Plaintiff's request must be denied. First, the claim contravenes paragraph 2 of the February 1984 accounting order by seeking materials relating to fiscal claims after August 13, 1946. 4 Cl.Ct. at 590. Secondly, defendant contends that the 1975 GSA Report specifically accounts for funds contained in the special deposit accounts for the period prior to August 14, 1946.

Plaintiff's contention that the 1975 GSA Report contains errors of fact or law is unpersuasive without some reference to such alleged errors in the accounting for the special deposit accounts. Plaintiff neither acknowledges defendant's response nor mentions the special deposit accounts after its initial request.

XII. *Disbursement Journal for IMPL Principal and Interest Accounts*

Plaintiff requests "copies of the voucher register or disbursement journal or other documents which set forth the appropriation fund and related subaccounts from which disbursements were made," Plf's Mot. filed Mar. 1, 1984, at 6, from the IMPL accounts, including the accounts containing funds representing interest on the IMPL accounts.

The February 1984 accounting order recognized that the adequacy of the 1975 GSA Report as to disbursements from IMPL accounts was specifically tried in 1978. 4 Cl.Ct. at 589. Accordingly, paragraph 3 of that order states that "[a]ll disbursement claims from IMPL accounts ... shall not be the subject of further proof...." *Id.* at 590. It is unclear from this accounting request whether plaintiff is seeking disbursement journals for the purpose of proceeding with a disbursement claim. Nevertheless, plaintiff twice has had the opportunity to specify the purpose of its request and to present it clearly. Denial of plaintiff's request is warranted in these circumstances. *See id.* at 589 (citing cases).

XIII. *Tribal Herd Operation*

Plaintiff asks for "copies of annual financial statistical, and other reports regarding the operation of the tribal herd." Plf's Mot. filed Mar. 1, 1984, at 6. This request is distinguishable from all others in that it does not seek reports, data, disbursement vouchers, or ledger cards concerning disbursement receipts or collections from a particular account or fund.

Defendant characterizes the request as akin to a resource management claim rather than a fiscal claim, *see White Mountain Apache Tribe,* 4 Cl.Ct. at 590 (claims related to resource management are not permitted in the context of a request for accounting), and responds that evidence is in the record to show that plaintiff's herd was not mismanaged. Arguably, the request pertains to the Livestock Association accounts. Paragraph 21 of the Gillis affidavit asserts: "No accounting appears for the Tribal herd...." Because data appended to that affidavit reveal accounting entries for the "Tribal Livestock Program," it appears that data exist upon which to base an accounting and it will be ordered for the period 1898 through August 13, 1946.

XIV. *Data on Timber Sales*

In its request plaintiff refers to sums set forth by the Government in the 1975 GSA Report which represent collections from timber sales. Designated by item number and page, the sums to which this request applies include:

1. Page 15—$1,462,381.86
2. Page 16—$ 460.00
3. Page 16—$ 821,730.63
4. Page 17—$ 643.34
5. Page 18—$ 7,801.43

With respect to these sums, plaintiff "requests a report and accompanying workpapers setting forth the quantity of board feet of logs felled and sold under licenses,

permits, and contracts from the [t]ribal forests; the unit price, the amount received, the date of receipt, the official receipt number, ... the name of purchaser[s]" and all "relevant receipts." Plf's Mot. filed Mar. 1, 1984, at 7. Plaintiff also requests that the information proffered contain "monthly subtotals, annual (calendar year) totals, and a grand total." *Id.*

Defendant responds that plaintiff's request is satisfied by the workpapers supporting the 1975 GSA Report and a GSA report issued on September 17, 1974 entitled "Accounting Report on: Property other than Money, Fort Apache and San Carlos Reservations Docket 22–H" [hereinafter referred to as the "1974 GSA Report"].

Although plaintiff's reply acknowledges defendant's response to this request, plaintiff goes no further than to repeat defendant's response and then suggests sources that the court may look to in order to salvage its request. Plaintiff states:

There is incorporated by reference into this Reply all of the statements which precede, together with the affidavits of Mary Endfield and Hal Butler, establishing beyond question that an accounting must be made by the United States Defendant to Plaintiff Tribe for funds improperly deposited into the IIM accounts.

Plf's Reply filed Aug. 1, 1984, at 16.

The Endfield affidavit avers that defendant controlled disbursements from tribal IIM accounts, and the Butler affidavit illustrates that defendant, without remunerating plaintiff, used tribal lumber for its own purposes. These affidavits do not address defendant's response, and their relationship to the original request is tenuous, at best. While the Gillis affidavit contains allegations of improper crediting of government accounts with funds derived from lumber sales, as well as the need for identification of that which comprises the trust corpus, these allegations do not take issue with defendant's response that plaintiff already has workpapers giving the information it seeks. However, Mr. Gillis' affidavit does address defendant's claim that the 1974 GSA Report contains the information sought. He states:

Based upon my examination of the 1970 and 1975 GSA Reports and the related Report which the Government offers as an accounting for property, I have been unable to determine that any such periodic inventories of land and resources have ever been rendered. The timber, grazing, and rights of way revenues listed in the "property accounting" are little more than listings of receipts and the totals shown there-in do not agree with related totals set forth in the 1975 GSA Report that deals with Tribal funds....

Gillis Aff. ¶ 21. This averment is sufficient to dispute the adequacy of the data on timber sales that has been made available to plaintiff.

XV. *Tribal Timber Used for Government Purposes; Revenues Generated by Sawmill Operations*

Defendant cogently rephrases plaintiff's request as one for "(1) an accounting for timber used by defendant to construct Government buildings and heat ... [government] buildings; and (2) an accounting for revenues generated by (or value received from the use of) sawmills constructed, maintained and/or operated through the use of plaintiff's IMPL funds." Def's Resp. filed June 1, 1984, at 19.

Defendant characterizes this request as "vague and unspecific." *Id.* The court agrees. While there is a governmental obligation to provide Indian tribes an accounting with respect to tribal timber, *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580, the obligation does not require the Government to respond to an accounting request with undefined parameters. Plaintiff's lack of specificity precludes any effort to properly frame an order. For example, plaintiff does not specify the standard or means by which defendant is to describe the timber, *e.g.*, board feet or logs cut, etc. The Butler affidavit describes the alleged misuse of plaintiff's timber at least from 1938, but

does not otherwise supply detail to the request.

A supplemental accounting with respect to part two of this request must be denied, as well, for lack of specificity. *See White Mountain Apache Tribe,* 4 Cl.Ct. at 589 (citing cases). The request neglects to state on what basis defendant should state revenues, *i.e.,* daily, quarterly, or annually. Plaintiff's affidavits add nothing to clarify or elaborate upon either part of this request. Although it is silent as to the years to which it relates, the request is not deemed fatally unspecific on this ground alone. *See supra* note 2.

XVI. *Reservation Logging Operations*

"Plaintiff ... requests copies of annual financial statements, contracts, licenses, and permits for all lumber companies conducting logging operations on the Reservation for the entire period of their operation on the Reservation." Plf's Mot. filed Mar. 1, 1984, at 8.

Defendant's response indicates that section II of the 1974 GSA Report discussing property on the reservation supplies "basic contract data for each of the lumber companies conducting logging operations on the Fort Apache Reservation." Def's Resp. filed June 1, 1984, at 19. Defendant also deems it unnecessary to supply plaintiff with the financial statements in respect to these logging companies because such information is not relevant to the issues in this case. Plaintiff has not disputed with particularity that the 1974 GSA Report illustrates or sets forth the contracts to which this request relates, nor has plaintiff shown the relevancy of the logging companies' financial statements to the issues in this case. Accordingly, this request must be denied.

XVII. *"Government" Sawmill Financial Reports*

Plaintiff seeks copies of the "annual financial and production reports of the 'government' sawmill on the ... Reservation for the entire period of its operation." Plf's Mot. filed Mar. 1, 1984, at 8.

Plaintiff's reply and the Gillis affidavit disclose that the premise for plaintiff's request arguably is that funds derived from the government sawmill arose from transactions involving tribal timber and were erroneously placed in government accounts. However, if this is so, then request XVII is duplicative of request IX— "Report of Statistics for Lumber Sales"— and the resolution of request IX would apply. If the purpose for this request is otherwise, then a supplemental accounting is barred by the principle that the Government need not account for an enterprise unsupported by tribal funds or resources. *Blackfeet & Gros Ventre Tribes,* 32 Ind.Cl. Comm. 65, 102.

This discussion emphasizes how plaintiff, despite two opportunities, has failed to state with clarity and specificity the purpose of request XVII. Accordingly, this request must be denied pursuant to *White Mountain Apache Tribe,* 4 Cl.Ct. at 589 (citing cases).

XVIII. *Grazing Contracts*

"Plaintiff ... requests copies of all grazing contracts, licenses, and permits." Plf's Mot. filed Mar. 1, 1984, at 8. Defendant describes the responsive data that plaintiff already possesses through the 1974 GSA Report. In reply plaintiff cites to the Gillis affidavit for an extensive review of the mismanagement of Indian funds. However, all references to grazing in either the reply or Gillis affidavit are unrelated to the claims set out concerning grazing contracts, licenses, and permits. Accordingly, this request must be denied.

XIX. *Rights-of-way and Land Resources*

Plaintiff requests a schedule of all rights-of-ways granted on its reservation, including a legal description and accounting of funds received for the period 1871–1951. Plaintiff also seeks an accounting relating to all land and resources utilized for a public purpose on the reservation. This request pertains to, "but [is] not limited to, the lands comprising the Fort Apache Military Reservation, the Theodore Roosevelt School and Agency, and any oth-

er Federal purposes." Plf's Mot. filed Mar. 1, 1984, at 9.

According to defendant, the 1974 GSA Report on property other than money provides an accounting pertaining to rights-of-way. The report covers the period from 1898 to 1946 and is thereby consistent with paragraph 2 of the February 1984 accounting order. 4 Cl.Ct. at 590. In its reply plaintiff expresses no specific dissatisfaction with the 1974 GSA Report. However, the accounting does not cover, as plaintiff requested, the years 1871 to 1897. A supplemental accounting as to these years only will be ordered.[5]

■ *Blackfeet & Gros Ventre Tribes* indicates that the Government must account for its use of the reservation for its own non-trust purposes. 32 Ind.Cl.Comm. at 78. Defendant concedes that its operations on the Fort Apache Military Reservation involved a non-trust purpose for which it shall supply a complete accounting. However, defendant states that its operations at the Theodore Roosevelt School are consistent with trust purposes. Defendant correctly premises this contention on the assertion that primarily Apache children were educated in the school, a fact with which plaintiff has not taken issue. Thus, defendant is relieved from the obligation to account for the school's operations. Although the accounting request was not limited to the military reservation or school, plaintiff's failure to particularize relieves defendant of any accounting obligation as to unspecified lands. *White Mountain Apache Tribe,* 4 Cl.Ct. at 589 (citing cases).

XX. *Reports Relating to Reimbursable Loan Programs*

"Plaintiff ... requests copies of the semi-annual reports setting forth the status of the reimbursable loan programs from the beginning of such program through June 30, 1951." Plf's Mot. filed Mar. 1, 1984, at 9. Defendant has opposed this request only insofar as it is inconsist-

ent with paragraph 2 of the February 1984 accounting order barring fiscal claims extending beyond August 13, 1946. *White Mountain Apache Tribe,* 4 Cl.Ct. at 590. To the extent that plaintiff's request is unopposed, it shall be granted.

XXI. *Salt River Reclamation Project*

Plaintiff seeks an accounting on an annual basis for funds appropriated for the management of plaintiff's range and forest lands, water resources, and hydrology, but which, as a result of improper management, in effect benefitted the Government's Salt River Federal Reclamation Project. This request covers the period from 1903 to 1946.

Plaintiff's claim regarding the suppression of its *Winters* Doctrine rights is not barred by section 12 of the Indians Claims Commission Act, 25 U.S.C. § 70k, and the court does not pass on the merits of the claim. *See White Mountain Apache Tribe v. United States,* 8 Cl.Ct. 677, 681, 683 (1985). Nevertheless, *Blackfeet & Gros Ventre Tribes* stands for the proposition that the Government need not account for a congressional appropriation of funds used on plaintiff's reservation. 32 Ind.Cl. Comm. at 102. The fund at issue in this request falls within the category of congressional appropriations.

*Motion To Dismiss*

■ Defendant moved to dismiss for failure to state a claim eleven exceptions to the 1975 GSA Report that have not yet been tried.

The standards appropriate for allowing accounting requests into the litigation at this date are different than those for ruling on whether an exception previously raised should remain in litigation. Defendant submitted extra-pleading material in support of its motion, and plaintiff opposed with three affidavits, all of which appended additional documents. RUSCC 12(c) requires that when matters outside the plead-

---

**5.** This ruling is not inconsistent with that in note 2 *supra.* Note 2 addresses requests which are governed by or pertain to the 1975 GSA Report. Request XIX pertains to information

covered by the 1974 GSA Report and in addition represents plaintiff's only request which extends back as far as 1871.

ings on a motion for failure to state a claim are presented to and not excluded by the court, the motion shall be disposed of pursuant to the procedures of Rule 56 for summary judgment, thereby affording plaintiff a "reasonable opportunity" further to amplify its opposition. *See Thoen v. United States*, 765 F.2d 1110 (Fed.Cir. 1985). This is so even if the opponent, not the movant, relies on the additional documentation. *See Cartledge v. Miller*, 457 F.Supp. 1146, 1150 & n. 15 (S.D.N.Y.1978).

Although plaintiff's affidavits are in a form unhelpful to pinpointing the existence of genuine issues of material fact, they impede a grant of summary judgment with respect to exception numbers 1(b) and 2(b). *See* Endfield Aff. ¶ 3. Defendant's challenge to the other exceptions shall be decided after further briefing pursuant to RUSCC 56.

## CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. A. Plaintiff's request in I.–IV. for a supplemental accounting for annual appropriations and disbursements under the Act of April 10, 1869, and subsequent acts in support thereof is denied.

B. Plaintiff's request in VI. A & B for Treasury cash cards for IMPL principal and interest accounts for the years 1883–1951 and 1930–1951 is granted in part. Defendant shall account for those Treasury cash cards reflecting balance information in the IMPL principal and interest accounts for the years 1898 up to and including August 13, 1946, and 1930 up to and including August 13, 1946, respectively.

C. Plaintiff's request in VI. C for Treasury cash cards for IMPL Agency School and related subaccounts for the period July 1, 1919, through June 30, 1951 is denied.

D. Plaintiff's request in VII. A 1 & 2 for all disbursement vouchers for all funds paid out of the principal IMPL accounts between 1883 and 1951 and the IMPL interest accounts from 1930 to 1951 is denied.

E. Plaintiff's request in VII. B 1–11 for all disbursement vouchers for all funds paid out of the following Tribal IIM accounts: 1) Fort Apache Stock Association; 2) Court Fund; 3) Receipts; 4) Disbursing; 5) Fishing Permits; 6) Unidentified Brands; 7) Wild Horse Project; 8) Old Folks Herd; 9) Rehabilitation Trust Fund; 10) Livestock Association; and 11) "[a]ny other Tribal, co-op, or enterprise [IIM] accounts which plaintiffs' subsequent inquiry may cause to be discovered" is granted in part and denied in part. Defendant shall supply plaintiff with disbursement vouchers for the accounts 1–9 listed above for the years 1898 up to and including August 13, 1946. Plaintiff's request with respect to 10–11 above is denied.

F. Plaintiff's request in VIII. for copies of all official receipts designated as collections in the 1970 and 1975 GSA Reports is denied.

G. Plaintiff's request in IX. designates by item number and 1975 GSA Report page the following sums representing lumber sales:

1. Page 15—$ 6,248.64
2. Page 15—$ 3.75
3. Page 16—$ 23.00
4. Page 18—$210.951.21

For each sum plaintiff requests a report and supporting workpapers setting forth monthly subtotals, calendar year totals, and a grand total corresponding to all lumber sales; receipts, dates thereof, sales invoices, and official receipt numbers are also desired. With respect to all lumber sold, supply data is sought regarding grade, dimension, board feet, and unit price. Plaintiff's request with respect to item 1. ($6,248.64) is denied. Plaintiff's request with respect to items 2 and 3 ($3.75 and $23.00 respectively) is granted. With respect to item 4 ($210,951.21), plaintiff shall be required to submit a supplemental brief by September 30, 1985, addressed solely to this item 4 of request IX. stating the reasons why or how a supplemental accounting would remedy the prior ac-

counting for the $210,951.21 that was placed in the government account. Defendant may reply by October 8, 1985.

H. Plaintiff's request in X. for copies of all ledger cards for the Special Deposit Accounts for the period beginning July 1, 1919, and ending June 10, 1951, is denied.

I. Plaintiff's request in XI. for all IIM ledger cards for the following accounts: 1) Fort Apache Stock Association; 2) Court Fund; 3) Receipts; 4) Disbursing; 5) Fishing Permits; 6) Unidentified Brands; 7) Wild Horse Project; 8) Old Folks Herd; 9) Rehabilitation Trust Fund; 10) Livestock Association; and 11) "other Tribal, and enterprise [IIM] accounts which plaintiff's inquiry may cause to be discovered" is granted in part and denied in part. Defendant shall provide plaintiff with copies of IIM ledger cards for the accounts 1–9 listed above for the years 1898 up to and including August 13, 1946. Plaintiff's request with respect to 10–11 above is denied.

J. Plaintiff's request in XII. for copies of the voucher register or disbursement journal or other documents that set forth the appropriation fund and related subaccounts from which disbursements were made from the IMPL accounts and the IMPL interest accounts is denied.

K. Plaintiff's request in XIII. for copies of annual financial, statistical, and other reports regarding the operation of the Tribal herd is granted for the period 1898 up to and including August 13, 1946.

L. Plaintiff's supplemental accounting request in XIV. which concerns the following sums listed on pages 15–18 of the 1975 GSA Report:

1. Page 15—$1,462.381.86
2. Page 16—$     460.00
3. Page 16—$ 821,730.63
4. Page 17—$     643.34
5. Page 18—$   7,801.43

is granted. With respect to these sums, defendant shall supply to plaintiff: monthly subtotals, annual (calendar year) totals, and a grand total; a report and accompanying workpapers setting forth the quantity of board feet of logs felled and sold under licenses, permits, and contracts from the tribal forest; and the unit price, amount received, receipt dates, official receipt numbers, and names of purchasers. Defendant shall append to the foregoing all relevant receipts.

M. Plaintiff's request in XV. that defendant account for all tribal timber used by the Government to construct and heat government buildings and to account for any revenues generated by or value received from the use of sawmills built, repaired, and/or operated through the use of Tribal IMPL accounts or at its expense is denied.

N. Plaintiff's request in XVI. for copies of annual financial statements, contracts, licenses, and permits for all lumber companies conducting logging operations on the Reservation is denied.

O. Plaintiff's request in XVII. for copies of the annual financial and production reports or other data expressing similar information for the Government sawmill on the White Mountain Apache Indian Reservation is denied.

P. Plaintiff's request in XVIII. for copies of all grazing contracts, licenses, and permits is denied.

Q. Plaintiff's request in XIX. for a schedule of all rights-of-ways granted on its reservation, including a legal description and accounting of funds therefrom, is granted for the years 1871 to 1897.

R. Plaintiff's request in XIX. for an accounting relating to all land and resources utilized for public purposes on the reservation is granted only with respect to the Fort Apache Military Reservation and is otherwise denied.

S. Plaintiff's request in XX. for copies of the semi-annual reports setting forth the status of the reimbursable loan programs is granted for the period beginning with the programs' inception and ending on August 13, 1946.

T. Plaintiff's request in XXI. that defendant render an accounting for funds appropriated for the benefit of plaintiff tribe but which were directed to the benefit of the Secretarial Salt River Reclamation Project is denied.

2. Defendant's motion to dismiss exceptions is denied with respect to exceptions 1(b) and 2(b) and shall otherwise proceed pursuant to RUSCC 56. Plaintiff shall respond to the motion by October 7, 1985, and shall brief each of the following exceptions separately by group: 1. 4(a), 5(a), and 108; 2. 3(b) and 10(a) 3. 8; 4. 9 and 118; 5. 104. Each reference in brief to any affidavit shall identify the affidavit and cite to the specific paragraph(s) relied on. Any affidavit shall discuss every exception it addresses individually and by number of the applicable exception. The Gillis affidavit shall be resubmitted in a format to comply with the foregoing. Any other materials plaintiff proffers for consideration must be identified as to group and exception(s) to which it applies. Portions of the record on file before January 1, 1983, and any legislative history to which reference is made in brief shall be copied and appended as exhibits. No appendix, including affidavits, shall exceed 100 pages. Defendant shall file its reply by October 21, 1985, in a format consistent with the foregoing.

3. The parties shall file a Joint Status Report on November 25, 1985, setting forth a proposed briefing schedule for all fiscal claims that have been tried and a proposed schedule for the supplemental accounting ordered and disposition, including trial, of all other fiscal claims that remain in this case. In submitting this status report, the parties should be mindful of the schedule set forth in ¶¶ 1–5 of the order entered on August 30, 1985, to the end that they propose a realistic and reasonable schedule for resolving all issues connected with plaintiff's fiscal claims. To the extent that the parties are not able to agree, separate status reports shall set forth the basis for any disagreement and propose alternatives.