**WHITE MOUNTAIN APACHE TRIBE OF ARIZONA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 22–H.

United States Claims Court.

Nov. 8, 1985.

William H. Veeder, Washington, D.C., for plaintiff. Robert C. Brauchli, White River, Ariz., of counsel.

James M. Upton, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, for defendant.

## ORDER

NETTESHEIM, Judge.

Defendant's motion to dismiss certain exceptions to an accounting by the Govern-

ment has been treated as a motion for summary judgment, which plaintiff has opposed. *See White Mountain Apache Tribe v. United States*, 9 Cl.Ct. 1, 10–11, 13 (1985) (the "September 20 order").

Considering whether these exceptions should remain in litigation is a different matter than determining whether plaintiff should be allowed to introduce at this stage of proceedings new supplemental accounting requests (some of which, in fact, duplicate the earlier-filed exceptions). *See* September 20 order and order entered on October 24, 1985, granting and denying in part plaintiff's motion for reconsideration. The exceptions already on file must be accorded exacting scrutiny under RUSCC 56 governing summary judgment.

The Federal Circuit recently encapsulated the standards for granting summary judgment:

> The party moving for summary judgment bears the burden of establishing that the material facts are not in dispute and entitle it to judgment as a matter of law. 6 J. Moore, W. Taggart, and J. Wicker, Moore's Federal Practice ¶ 56.- 15[3] (2d ed. 1985). If an issue of credibility exists, or if the movant fails to establish that there is no genuine issue over any material issue of fact, the motion must be denied. *United States v. Diebold, Inc.*, 369 U.S. 654 [82 S.Ct. 993, 8 L.Ed.2d 176] (1962). After the moving party has clearly established its case, the duty to go forward shifts to the party opposing the motion to produce evidence that places material facts in dispute. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 [90 S.Ct. 1598, 1609, 26 L.Ed.2d 142] (1970); *Lehner v. United States*, 1 Cl.Ct. 408, 413 (1983).

*Balboa Insurance Company v. United States*, 775 F.2d 1158, 1163 (1985) (footnote omitted). *See generally SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116–17 (1985) (Markey, C.J.). The standard for summary judgment when the opposing party has submitted affidavits is rigorous: "In order for a trial judge to grant a motion for summary judgment the judge must find that no material fact is in dispute or must resolve any dispute over the existence of a material fact in favor of the party resisting summary judgment." *Salazar v. United States*, 775 F.2d 284, 286 (1985) (citing *Skaw v. United States*, 740 F.2d 932, 936–37 (Fed.Cir.1984)).

*Group 1.—Exceptions 4(a), 5(a), and 108.*

■ Although defendant is charged with the movant's burden to establish the absence of issues for trial, case law recognizes that the party taking exception to the designation of an account appearing proper on its face must specify some impropriety with respect to that account. *Blackfeet & Gros Ventre Tribes v. United States*, 32 Ind.Cl.Comm. 65, 85 & n. 1 (1973). To sustain a reaccounting, *Blackfeet* requires a showing of an "error of ... magnitude" involving the improper placement of tribal funds into a government account. *Id.* at 93; *see Ottawa Chippewa Tribe v. United States*, 35 Ind.Cl.Comm. 385, 398 (1975) ("In the absence of something in the body of the [accounting] report casting doubt on the applicability of the heading to particular items listed under it, we accept it as meaning what it says.")

■ For Group 1. of the exceptions, as well as for other groups, plaintiff by brief has asserted contested factual issues. However, argument in brief alone without the corroboration of a factual statement by sworn affidavit is insufficient to raise a genuine issue of material fact. *See Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984). Plaintiff was given an opportunity to submit affidavits and did not move pursuant to former RUSCC 56(f) (Rule 56(g) under the rules as amended November 1, 1985) for additional time to make its submission more complete.[1] Although every effort has been

---

1. In paragraphs 7, 9–10, 12–13, 18, and 21–23 of his affidavit, Mr. Gillis describes how what he knows or suspects will be revealed or confirmed by the information sought if a reaccounting is allowed. Significantly, however, he does not claim that he needs time or discovery to obtain

made to recognize those portions of plaintiff's brief that complement plaintiff's affidavit, such overlap rarely occurs.

In exception 4(a) plaintiff asserts that revenues totalling $21,989.73 were credited improperly to " 'Government Accounts.' " Plaintiff further claims that defendant's accounting fails to show how these revenues were disbursed for the Tribe's benefit. Plf's Exceptions filed Nov. 28, 1975, at 13.

To raise an issue that the moneys were tribal or to identify another type of error that would allow plaintiff to go behind this designation, plaintiff relies on the Affidavit of Paul J. Gillis, Oct. 8, 1985, ¶ 6. Mr. Gillis breaks the sum into eight receipt categories, each of which is listed in the 1975 GSA Report under the caption "Government Accounts":

| | | |
|---|---|---|
| 1. | Sales of Hides | $12,156.39 |
| 2. | Grazing Permits | 477.90 |
| 3. | Rents and Royalties on Land | 256.58 |
| 4. | Rents and Royalties on Minerals | 1,056.25 |
| 5. | Right-of-way Sales and Damages: Telephone | 43.90 |
| 6. | Sales of Ore | 94.28 |
| 7. | Hunting, Camping, and Fishing Permits | 93.00 |
| 8. | Sales of Timber | 7,801.43 |

*See* Gillis Aff. ¶ 6.

For category 1. plaintiff concedes that the $12,156.39 received for the sale of hides constitutes a Class II receipt. Such receipts are comprised of " '[f]unds to be covered back into the appropriations from which they were taken and made available for reexpenditure for the purposes for which originally appropriated.' " *Id.* ¶ 7 (quoting Regulations of the Indian Office § 284 (1904)). The Gillis Affidavit indicates that the appropriations may be either government, Indian treaty, or agreement funds. He implies that if the appropriations used to purchase the livestock from which hides were produced were originally Indian treaty or agreement funds, receipts from the sale of hides should not be placed in the government account. In this regard

information that will entitle him to the reaccounting in the first place. That is the purpose

Mr. Gillis contends: "Without underlying proof that would establish the specific appropriation fund used to purchase the cattle from which the hides sold were derived, I am unable to ascertain the correctness of the treatment of the Trustee United States of [the receipts at issue]...." *Id.*

For categories 2. through 6.—(2) Grazing Permits, (3)–(4) Rents and Royalties on Land and Minerals, (5) Right-of-Way Sales and Damages: Telephone, and (6) Sales of Ore—plaintiff asserts either of two arguments to avert summary judgment: that the 1975 GSA Report and supporting workpapers do not justify defendant's depositing funds in the government account; or that defendant has not shown that it directed appropriations to the purchase of the item or service which generated the funds at issue.

In those instances in which the funds at issue comprise Class II (*i.e.*, category 1., conceded by plaintiff,—Sales of Hides, $12,156.39) or Class IV receipts, defendant concedes that "[t]he fact that the 1975 GSA Report labels these funds under the general caption of Government Accounts does not mean that these funds were to be covered into the Treasury ... for its own purposes...." Def's Reply filed Oct. 21, 1985, at 3. According to defendant, Class II or IV receipts now held in government accounts were to be re-expended for the purpose of the original appropriation. This does not mean, however, that the funds were Tribe-owned or did not belong in government accounts.

■■■ Plaintiff's arguments, although supported by affidavit, do not raise a genuine issue of material fact because plaintiff has not shown the impropriety of placing the receipts corresponding to categories 1. through 6., as listed in the 1975 GSA Report, in government accounts. Asserting that the receipts related to these categories may have been generated by treaty or agreement appropriations is not sufficient. Thus, plaintiff has not carried its burden of

of former RUSCC 56(f).

specifying the alleged impropriety contained within the particular categories.[2]

■ For category 7.—the sum $93.00 received for Hunting, Camping, and Fishing Permits—the Gillis Affidavit states that the 1975 GSA Report discloses that $19,-122.41 was credited, under the same caption, to tribal trust funds rather than to the government accounts. *See* Gillis Aff. ¶ 10. This discrepancy raises a genuine issue of material fact concerning the propriety of placing the $93.00 into the government account rather than the tribal account.

A question must be posed concerning the wisdom of using judicial resources in 1985 to decide that an exception taken in 1975 to an item of less than $100.00 in a decade-old accounting report should be tried sometime in 1986 or thereafter. Settlement of such claims may lack the precision of a final judgment after trial, but it commends itself as an alternative that the parties should continue to explore.

■ Finally, category 8. pertains to the sum $7,801.43 for proceeds received from the sale of timber. The recent published and unpublished orders in No. 22–H have stressed the importance of assuring that the Tribe receives funds generated from timber, which has been shown on a preliminary basis to be a tribal resource. *See, e.g.,* September 20 order at 10. Summary judgment is not warranted as to this item.[3]

### Group 2.—Exceptions 3(b) and 10(a)

By exception 3(b) plaintiff asserts that defendant has not accounted "for the transactions involved in, and the purposes for which it made, dispositions (including direct disbursements and refunds) in the total amount of $812,467.64 from the White

Mountain Apache 'Special Deposit Account.' " Plf's Exceptions filed Nov. 28, 1975, at 10 (footnote omitted). Plaintiff's analysis of the 1975 GSA Report reveals the following disbursements from the special deposit account:

| | | |
|---|---|---|
| 1. | Cattle Sales | $769,480.86 |
| 2. | Telephone and Telegraph | 27,500.40 |
| 3. | Payroll withholdings | 3,766.40 |
| 4. | Miscellaneous | 1,887.68 |
| 5. | Timber | 9,875.00 |
| 6. | Court Fines | 957.30 |

*See* Gillis Aff. ¶ 19.

■ Regarding the figure in item 1., defendant asserts that more than 90 percent of the $812,467.64 at issue was derived from the sale of cattle owned by individual Apaches who were members of various livestock associations. Thus, the proceeds are characterized as property of individual Apaches. The manner in which the account is identified does not establish defendant's characterization for purposes of summary judgment. The Gillis Affidavit raises a genuine issue of material fact by averring that the livestock cooperatives "were in large part funded by monies from the Tribe's trust accounts." Gillis Aff. ¶ 21 (footnote omitted).

■ Plaintiff has failed to raise a genuine issue of material fact concerning items 2. through 4. For sums represented by these items, Mr. Gillis states either that he lacks sufficient information to "make a determination as to the proper treatment" of the item or has "no comment" with respect thereto. Gillis Aff. ¶ 22. *Blackfeet* requires the showing of an "error of ... magnitude" in order to gain a reaccounting. 32 Ind.Cl.Comm. at 93. Plaintiff has not made this showing.

---

**2.** Plaintiff fails to raise a genuine issue of material fact with respect to exception 5(a), and the sum $91,285.38 in exception 108, which represents that portion of exception 108 unrelated to proceeds from the sale of lumber. Under exception 5(a) and for the aforementioned sum, the Gillis Affidavit offers argument which is similar to that which was offered concerning exception 4(a). Again, plaintiff has failed to supply the showing required by *Blackfeet* and *Ottawa Chippewa.*

**3.** The sum $91,285.38 referred to in exception 108 was treated in note 2 *supra.* The remaining sum in exception 108 pertains to $210,951.21 received for the "Sale of Lumber." Gillis Aff. ¶ 17 (quoting 1975 GSA Report at 17–18). For the reasons set forth in the accompanying text, summary judgment is denied.

Summary judgment is denied for items 5. and 6. The former pertains to timber. *See supra* note 3 and accompanying text. As for item 6., Court Fines, defendant concedes that this sum represents "tribal money" "deposited in a tribal IIM account 'Court Fund—Fort Apache Indians.'" Def's Resp. filed June 1, 1984, at 16 & n. 1.

### Exception 10(a)

Exception 10(a) seeks an accounting for, as plaintiff alleges, $120,005.35 in funds which the Government "collected and credited to 'other accounts' that belonged to or were collected for the benefit or use of, the White Mountain Apache Tribe and/or any of its tribal organizations." Plf's Exceptions filed Nov. 28, 1975, at 24. The following summarizes the accounts in which the sum in issue is located:

| | | |
|---|---|---|
| 1. | Special Deposits, Unapplied Collections | $ 4,911.57 |
| 2. | Special Deposits, Federal Taxes | 26,534.21 |
| 3. | Special Deposits, U.S. War Bonds | 37,721.77 |
| 4. | Special Deposits, Contributed Funds | 48,702.10 |
| 5. | Special Deposits, Court Funds | 2,135.70 |

*Id.* at 23 (quoting 1975 GSA Report at 18).

Summary judgment is granted for items 1. through 3. For the sums corresponding to these items, Mr. Gillis states either that he has "no questions" or is unable to comment without conducting additional research. Gillis Aff. ¶ 23. No genuine issue of material fact is raised by such responses.

Plaintiff has raised a genuine issue of material fact with respect to item 4. for the same reasons discussed with respect to cattle sales in the immediately preceding section. *See* Gillis Aff. ¶¶ 21, 24 and Plf's Resp. filed Oct. 8, 1985, at 13–14. Defendant's motion for summary judgment is also denied with respect to item 5. Defendant concedes that the sum corresponding to this item represents tribal funds transferred to an IIM account entitled "'Court Fund—Fort Apache Indians.'" Def's Mem. of Exceptions filed Mar. 26, 1984, at 15.

### Group 3—Exception 8

With respect to exception 8, plaintiff claims that the Government acted improperly by "crediting to 'Government Accounts' ... [a] sum coded 'R–32' ('Refund of Previously charged Disbursements')," without identifying in the 1975 GSA Report "the account from which the sum was originally disbursed." Plf's Exceptions filed Nov. 28, 1975, at 20.

Defendant contends that the 1975 GSA Report indicates that the funds in question were charged from plaintiff's IMPL principal account and subsequently were credited to the IMPL principal account. Identification of the credit of refunds occurs in the 1975 GSA Report as "Receipts Due to Audit Exceptions." The refund of sums originally not disbursed from tribal moneys was, according to defendant, properly credited into government accounts. For these funds defendant's identification is "proper on its face." *See Blackfeet & Gros Ventre Tribes*, 32 Ind.Cl. Comm. at 85 & n. 1.

To avoid summary judgment in defendant's favor, plaintiff argues that note 1 on page 12 of Defendant's Memorandum of Exceptions Not Tried in 1978, filed Mar. 26, 1984, is inconsistent with defendant's current position. Although plaintiff apparently has misconstrued defendant's analysis and applied note 1 in a manner unintended by defendant, plaintiff's argument merely represents "[a]rgument and assertion of counsel." Such argument "cannot substitute for factual statements under oath that establish a genuine material issue." *Levi Strauss & Co. v. Genesco, Inc.,*, 742 F.2d at 1404. Nor does Mr. Gillis' affidavit raise a genuine issue of material fact in response to defendant's assertions that the funds in question were properly credited and identified in the 1975 GSA Report. Accordingly, defendant's motion for summary judgment shall be granted with respect to this exception.

### Group 4—Exceptions 9 and 118

By exception 9 plaintiff takes issue with the "improper crediting to 'government ac-

counts' of all other moneys which ... belonged to ... [it]." Allegedly these funds "were derived from property owned by plaintiffs." Plf's Exceptions filed Nov. 28, 1975, at 21–22. Plaintiff charges in exception 118 that the Government did not "account for, or pay to ... [the Tribe] or ... collect on ... [its] behalf, revenues and income belonging or payable to ... [the Tribe] arising out of transactions or circumstances" which were undisclosed or inadequately disclosed in the 1975 GSA Report and supporting workpapers. Plf's Twelfth Exceptions filed July 1, 1976, at 33.

The Indian Claims Commission has stated that particulars must be specified by a tribe seeking to challenge the Government's obligations of care and diligence in the administration of funds. Specificity of exceptions was a requirement to which the Commission strictly adhered. *Three Affiliated Tribes of the Fort Berthold Reservation v. United States*, 37 Ind.Cl.Comm. 129, 131 (1975). The specificity requirement has been endorsed by this court. *White Mountain Apache Tribe v. United States*, 4 Cl.Ct. 586, 589 (1984) (citing cases). The Gillis Affidavit raises some genuine issues of material fact concerning defendant's contention that exceptions 9 and 118 are unspecific.

 Plaintiff's original statement of exception 9 failed to state which funds were erroneously placed into government accounts and from what sources these funds derived. However, Mr. Gillis supplies specificity by indicating that the sums stated in the 1975 GSA Report to which exception 9 is deemed to apply include:

Page 18—$189,528.50: Fee—Timber Sales

Page 18—$ 7,801.43: Sale of Timber

Gillis Aff. ¶ 28.

Given this court's adherence to the notion that plaintiff should not be deprived of

funds received from timber, which has been shown on a preliminary basis to be a tribal resource, the motion for summary judgment is denied with respect to the above-listed sums.[4] Summary judgment is granted with respect to exception 9 for any listing of sums that plaintiff says that it should discover through subsequent research. This is a summary judgment proceeding. Former RUSCC 56(f) supplies the only means to make further showings, and plaintiff has not complied with the rule. Procedural infirmities aside, plaintiff cannot urge seriously more than a decade after exceptions are filed that a party can keep the evidentiary door open for ongoing investigations.

*Exception 118*

Plaintiff's original statement of exception 118 fails to state the source[s] of revenue belonging to the Tribe which were undisclosed or inadequately disclosed in the 1975 GSA Report and supporting workpapers. By Mr. Gillis' affidavit, plaintiff endeavors to clear up the vagueness of exception 118:

The 1970 and 1975 [GSA] reports are merely listings of receipts and disbursements and do not disclose sufficient information, even when taken into consideration with the 1974 property accounting, to enable me to assure Plaintiff Tribe that it has received a fair price or the full price for the sale of resources that generated the receipts. Adequate disclosure would include the description (species and grade for timber), the number of units sold and the unit price. These prices would have to be compared to prevailing rates in the market at the time of the sale. The principal items of concern are timber, lumber, cattle and grazing lands.

Gillis Aff. ¶ 26.

 Plaintiff also expresses similar concerns with respect to its "subsistence

---

**4.** The Gillis Affidavit lists one other sum located on page 18 of the 1975 GSA Report in order to clarify exception 9—"$23,750.08 Transfers from BLM." Gillis Aff. ¶ 28. Mr. Gillis fails to point to anything that would indicate that the sum may represent tribal funds derived from a tribal

resource. Because of plaintiff's failure to particularize, defendant's motion for summary judgment is granted with respect to this sum. *See White Mountain Apache Tribe*, 4 Cl.Ct. at 589; *Three Affiliated Tribes*, 37 Ind.Cl.Comm. at 131.

(provisions) and agricultural goods." Gillis Aff. ¶ 27. The Gillis Affidavit is sufficiently specific to preclude granting defendant's motion for summary judgment on the basis that plaintiff failed to particularize its exception. Nonetheless, summary judgment is denied with respect to exception 118 only insofar as it pertains to timber, lumber, and cattle. For these resources plaintiff by affidavit or reference to the September 20 order has shown the likely impropriety of placing funds derived from such resources into the government account. With respect to "grazing lands," "subsistence (provisions) and agricultural goods," Gillis Aff. ¶¶ 26–27, an equivalent showing has not been made to satisfy the requirements of either *Blackfeet* or *Ottawa Chippewa*.

█ Plaintiff has requested by brief additional time to conduct further research in order to remedy the deficiencies in exceptions 9 and 118. This request does not comport with former RUSCC 56(f). As defendant points out:

> The plaintiff had more than six months (*i.e.,* from March 26, 1984 (when the defendant's Memorandum on Exceptions Not Tried in 1978 was filed) to October 18, 1984 (when final judgment was entered)) in which to research such matters and more than four months after defendant's motion to dismiss was filed (on June 1, 1984) to do so....

Def's Reply filed Oct. 21, 1985, at 9–10. In fact, plaintiff has received favorable rulings concerning exceptions 9 and 118 as a result of its efforts to clarify such exceptions as recently as in its filing submitted on October 8, 1985.

*Group 5—Exception 104*

█ Plaintiff asserts that defendant was duty bound to make balances in plaintiff's IMPL principal and interest accounts "productive of income prior to June 30, 1930 and fully productive thereafter." Plf's Eleventh Exceptions filed May 12, 1976, at 21. Plaintiff alleges that this obligation was imposed on defendant by the Act of May 25, 1918, Pub.L. No. 159, 40 Stat. 561, 591, and is supported by the decision in *Cheyenne-Arapaho Tribes v. United States*, 206 Ct.Cl. 340, 512 F.2d 1390 (1975). Defendant contends that exception 104 should be dismissed in its entirety on the basis of the decision in *Mitchell v. United States*, 229 Ct.Cl. 1, 15, 664 F.2d 265, 274 (1981), *aff'd*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), in which the United States Court of Claims stated, "Our decision in *Cheyenne-Arapaho* ... deals with interest on Indian funds for the period after the August 1946 closing-date of Indian Claims Commission claims...."

Defendant's reliance upon the quoted statement is unpersuasive because *Cheyenne Arapaho* does not stand for the proposition that the Government was never under an obligation to make tribal funds productive of income prior to August 13, 1946. Defendant's language indicates, at the very least, that the Court of Claims in *Mitchell* interpreted *Cheyenne Arapaho* as requiring the Government to make Indian funds productive of income after August 13, 1946. Accordingly, defendant's motion for summary judgment is denied.

### CONCLUSION

Based on the foregoing,

IT IS ORDERED, as follows:

1. Defendant's motion for summary judgment is denied with respect to exception 4(a) as it pertains to Hunting, Camping, and Fishing Permits—$93.00 and Sales of Timber—$7,801.32; for exception 5(a); and for exception 108 as it pertains to Sales of Lumber—$210,951.21. Defendant's motion is granted for all other categories and sums referred to in exceptions 4(a) and 108, and these exceptions are dismissed to the extent indicated.

2. Defendant's motion for summary judgment is denied with respect to exception 3(b) as it pertains to Cattle Sales—$769,480.86, Timber Sales—$9,875.00, and Court Fines—$957.30; and for exception 10(a) as it pertains to Special Deposits—Contributed Funds—$48,702.10, and Special Deposits—Court Funds—$2,135.70. Summary judgment is granted for all other

categories and sums referred to in exceptions 3(b) and 10(a), and these exceptions are dismissed to the extent indicated.

3. Defendant's motion for summary judgment is granted with respect to exception 8, and the exception is dismissed.

4. Defendant's motion for summary judgment is denied with respect to exception 9 as it pertains to Fee-Timber Sales—$189,528.50 and Sale of Timber—$7,801.43; and for exception 118 as it pertains to timber, lumber, and cattle. Summary judgment is granted for all other categories and sums referred to in exceptions 9 and 118, and these exceptions are dismissed to the extent indicated.

5. Defendant's motion for summary judgment is denied with respect to exception 104.